SHERMAN & HOWARD L.L.C.
David A. Weatherwax (No. 006996)
Sean M. Moore (No. 031621)
Jake T. Rapp (No. 036208)
201 East Washington Street, Suite 800
Phoenix, Arizona 85004-2327
Telephone: (602) 240-3009
Fax: (602) 240-6600
E-mail:  dweatherwax@shermanhoward.com
         smoore@shermanhoward.com
         jrapp@shermanhoward.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Alan L. Garner as Trustee of the A.G. Family Residence Trust dated December 21, 2012,<br><br>        Plaintiff,<br>  v.<br>Steven V. Chesney and Beverly S. Chesney, husband and wife,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff alleges as set out below.

## COUNT I

(Breach of Contract)

1. Plaintiff is (i) a citizen and resident of the state of Wyoming, and (ii) the Trustee of the A.G. Family Residence Trust dated December 21, 2012 (the "Trust").

2. The Trust (i) is formed in Wyoming, and (ii) owned the real property located at 5729 E. Cactus Wren Road, Paradise Valley, Arizona 85253 (the "Property").

3. Upon information and belief, defendant Steven V. Chesney ("Chesney"): (i) is a citizen and resident of the state of Arizona; (ii) is married to Beverly S. Chesney ("Beverly Chesney"); (iii) has at all times relevant to this Complaint acted on behalf of himself and the marital community comprised of Chesney and Beverly Chesney; and (iv) has caused an event to occur in Arizona out of which this Complaint arises.  Chesney and Beverly Chesney are referred to collectively as "Defendants", and the marital community comprised of Chesney and Beverly Chesney is referred to as the "Defendants' Marital Community".

4. Upon information and belief, defendant Beverly Chesney: (i) is a citizen and resident of the state of Arizona; (ii) is married to Chesney; (iii) has at all times relevant to this Complaint acted on behalf of herself and Defendants' Marital Community; and (iv) has caused an event to occur in Arizona out of which this Complaint arises.

5. This Court has jurisdiction under 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the adverse parties are of diverse citizenship.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b)(2).

7. On or about February 16, 2020, Defendants (as Buyer) entered into a written Residential Resale Real Estate Purchase Contract (the "Contract") with the Trust (as Seller) to purchase the Property "with all improvements, fixtures, and appurtances thereon or incidental thereto, plus [certain] personal property … (collectively the 'Premises')" from the Trust for $4.3 million (the "Sale"). A true copy of the Contract is attached as Attachment 1.

8. The Contract is a valid, binding, and enforceable contract between the Trust and Defendants.

9. The Contract required Defendants to pay a $100,000 earnest deposit (which they did) and "$4,200,000.00 Cash at Close of Escrow".

10. Close of Escrow ("COE") was scheduled to occur on April 6, 2020 (the "COE Date").

11. Defendants failed to "execute and deliver to Escrow Company all closing documents and perform all other acts necessary in sufficient time to allow COE to occur on [the] COE Date".

12. Defendants also failed "to pay the required closing funds by the scheduled COE".

13. In Section 1d., lines 29-30, of the Contract, Defendants "acknowledge[d] that failure to pay the required closing funds by the scheduled COE, if not cured after a cure notice is delivered pursuant to Section 7a, shall be construed as a material breach of this Contract …"

14. Pursuant to Section 7a of the Contract, on April 6, 2020, the Trust delivered a written "Cure Period Notice" to Defendants (the "Cure Notice"). A true copy of the Cure Notice is attached as Attachment 2.

15. The Cure Notice provides, among other things, that:

> "**PURSUANT TO THE REMEDIES SECTION OF THE CONTRACT** Seller **hereby delivers notice to** Buyer **of the following non-compliance with the Contract:**
>
> Buyer's failure to timely execute and deliver to Escrow Company all closing documents, pay all required closing funds and perform all other acts necessary to allow COE to occur on the April 6, 2020 COE Date.
>
> &ast;          &ast;          &ast;
>
> **If the non-compliance is not cured within three (3) days after delivery of this notice ('Cure Period') the failure to comply shall become a breach of Contract.** …"

16. In addition to the Cure Notice, and although not required by the Contract, on April 6, 2020, the Trust's lawyer (through Seller's real estate agent), sent a letter (the "Notice Letter") to Defendants' real estate agent (Sheri Douglas), a true copy of which is attached as Attachment 3.

17. The Notice Letter provides, among other things, as follows:

> "As you know, the Contract requires that COE occur on April 6, 2020 (the '**COE Date**'). Although (i) there are no unfulfilled contingencies or conditions to Buyer's obligation to timely close Escrow under the Contract and (ii) Seller fulfilled all of its contractual obligations required to convey the Property to Buyer and close Escrow well in advance of the COE Date, *Buyer failed to purchase the Property and close Escrow on the COE Date as required by the Contract*. Consequently, in accordance with Lines 310-314 of the Contract, earlier this evening Seller provided to Buyer a three-day Cure Period Notice (which three-day period ends at 11:59 p.m. on Thursday, April 9, 2020 [the "**Cure Period**"]). …
>
> In the event Buyer does not timely purchase the Property and close Escrow prior to the expiration of the Cure Period, such failure by Buyer will constitute a material breach of the Contract, entitling Seller to cancel the Contract and proceed against Buyer by exercising all of Seller's available alternative and cumulative claims, rights and remedies under the Contract, at law and in equity, including without limitation Seller's right to accept the Earnest Money and/or pursue legal action against Buyer for monetary damages caused by Buyer's material Contract breach, which damages may include, without limitation: diminution in the value of the Property; lost opportunity damages; holding costs proximately incurred by Seller's unanticipated, ongoing ownership of the Property beyond the COE Date (including costs and expenses for payments toward repair/replacement, maintenance, insurance, property taxes, utilities and security for the Property); and Seller's right to recover prevailing party attorneys' fees, costs and related expenses under Contract Lines 341-343." (Italics emphasis added).

3

18. Defendants did not cure the defaults within the three-day Cure Period (or at all) and committed a material breach of the Contract.

19. On April 9, 2020, the Escrow Company sent a letter to the parties stating that Defendants had "**failed to cancel [the Contract] under any acceptable provision in the … Contract**." (emphasis added).

20. In addition to the Cure Notice and the Notice Letter, in an effort to mitigate the Trust's damages, on April 16, 2020, the Trust's lawyer sent a letter ("the April 16 Letter") to Defendants' lawyer, a true copy of which is attached as Attachment 4.

21. The April 16 Letter provides, among other things, as follows:

> "Commencing with our April 8th and 9th telephone conversations and continuing through my myriad of subsequent unanswered telephone messages and emails to you, Seller made a continuous good faith effort to provide Buyer with additional time within which to fulfill its contractual obligations by closing escrow and purchasing the Property for the agreed upon $4,300,000 sale price.
>
> Because Buyer failed to purchase the Property and close Escrow prior to the expiration of the Cure Period, Buyer committed a material breach of the Contract. Consequently, Seller (as the non-breaching party) hereby formally notifies Buyer that (i) the Contract has been cancelled and Buyer has no further rights thereunder, (ii) Seller will change the MLS listing from Pending to Active and otherwise begin again to actively market the Property for sale in an effort to mitigate Seller's damages, and (iii) Seller hereby reserves and preserves all of its available claims, rights and remedies under the Contract, at law and in equity, which claims, rights and remedies may include, without limitation, Seller's right to accept and retain the Earnest Money and/or pursue legal action against Buyer to recover monetary damages caused by Buyer's material Contract breach, which damages may include, without limitation: diminution in the value of the Property; *lost opportunity damages*; marketing costs (that will now include unexpected staging expenses) and holding costs proximately incurred by Seller's unanticipated, ongoing ownership of the Property beyond the April 6th COE Date (including costs and expenses for payments toward repair/replacement, maintenance, insurance, property taxes, utilities and security for the Property); and Seller's right to recover prevailing party attorneys' fees, costs and related expenses." (Italics emphasis added).

22. After the breach, and to mitigate its damages, the Trust re-marketed, re-staged, and continued to maintain, the Premises until April 9, 2021, when the Premises sold for $4,300,000.

23. As a result of the breach, the Trust has suffered damages in an amount to be proven at trial.

4

24. The Trust's damages include, but are not limited to: (i) not less than $112,000 in carrying costs from April 6, 2020 through April 9, 2021, (ii) $15,000 in attorneys' fees incurred in connection with the failed closing, (iii) an additional $43,000 in commissions (6% on the new sale vs 5% on the failed Sale), and (iv) significant lost opportunity investment money that would have been earned, if the Sale had closed on April 6, 2020 -- plus (a) the additional attorneys' fees and costs incurred in connection with these proceedings, and (b) all accrued and accruing interest on the damages incurred.

25. Section **7c**. (lines 325. – 333.) of the Contract provides: "**Alternative Dispute Resolution ("ADR")**: Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this Contract in accordance with the REALTORS Dispute Resolution System, or as otherwise agreed. All mediation costs shall be paid equally by the parties."

26. On May 10, 2021, after all of the Trust's further efforts to resolve this matter failed, pursuant to Section 7c of the Contract, the Trust initiated a mediation of its claim in accordance with the REALTORS Dispute Resolution System. A true copy of the Request to Initiate Mediation is attached as Attachment 5.

27. In further breach of their obligations under the Contract, Defendants failed to participate in the mediation process.

28. As a result, on June 14, 2021, Mediator Renee Gerstman sent a letter to counsel for both parties stating, among other things:

> "On June 8, 2021, I set a deadline of June 11, 2021, for Buyer to address any challenges to mediator selection, mediation, or any process issues and that absent a timely response I would prepare a letter advising that Buyer has been provided ample opportunity to respond to Seller's mediation request and that Buyer has failed and refused to acknowledge that request or commit to participate in mediation.
>
> **Despite repeated efforts to have Buyer engage and participate in the mediation process, Buyer has failed and refused to confirm that they agree to proceed to mediation** or agree to my appointment as mediator. Because **Buyer has failed to participate in mediator selection process or scheduling of mediation**, I am closing my file on this matter. A copy of this letter will be sent to the Arizona Association of Realtors." (emphasis added).[1]

29. The Trust is entitled to recover its attorneys' fees incurred on this claim pursuant

---

[1] A true copy of the Mediator's letter is attached as Attachment 6.

5

to the Contract and A.R.S. § 12-341.01.

30. The Trust is entitled to recover its costs incurred on this claim pursuant to the Contract and A.R.S. § 12-341.

31. In the event a judgment is entered by default, the Trust will seek attorneys' fees on this claim in an amount not to exceed $50,000.

WHEREFORE, the Trust prays for a Judgment in its favor, jointly and severally against Defendants and Defendants' Marital Community for:

(1) the full amount of damages proven at trial, <u>plus</u> prejudgment and post judgment interest until paid;

(2) its costs, attorneys' fees and other expenses incurred in bringing this action; and

(3) such other relief as the Court deems proper.

## Count II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

32. All allegations set out in Count I are incorporated herein.

33. The Contract includes an implied covenant of good faith and fair dealing.

34. The implied covenant of good faith and fair dealing, among other things, prohibited Defendants from doing anything to prevent the Trust from receiving the benefits and entitlements of the Contract.

35. Defendants deprived the Trust from receiving all of its benefits and entitlements of the Contract by, among other things, engaging in the wrongful conduct set out above.

36. As such, Defendants breached the implied covenant of good faith and fair dealing.

37. The Trust has been damaged by Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

38. The Trust's damages include, but are not limited to: (i) not less than $112,000 in carrying costs from April 6, 2020 through April 9, 2021, (ii) $15,000 in attorneys' fees incurred in connection with the failed closing, (iii) an additional $43,000 in commissions (6% on the new sale vs 5% on the failed Sale), and (iv) significant lost opportunity investment money that would have been earned, if the Sale had closed on April 6, 2020 --

plus (a) the additional attorneys' fees and costs incurred in connection with these proceedings, and (b) all accrued and accruing interest on the damages incurred.

39. Plaintiff believes that Defendants' conduct was gross, wanton, malicious and oppressive, and showed spite, ill-will and reckless indifference to the interest of others.

40. As a result, if plaintiff's belief is correct, Defendants are liable for punitive damages.

41. The Trust is entitled to recover its costs and attorneys' fees on this claim, pursuant to the Contract, A.R.S. §§ 12-341 and 12-341.01, and as otherwise provided by law.

42. In the event a judgment is entered by default, the Trust will seek attorneys' fees on this claim in an amount not to exceed $50,000.

WHEREFORE, the Trust prays for a Judgment in its favor, jointly and severally against Defendants and Defendants' Marital Community for:

(1) the full amount of damages proven at trial, plus prejudgment and post judgment interest until paid;

(2) punitive damages in an amount appropriate and sufficient to punish and deter Defendants and others from engaging in similar conduct in the future;

(3) its costs, attorneys' fees and other expenses incurred in bringing this action; and

(4) such other relief as the Court deems proper.

DATED: November 22, 2021.

SHERMAN & HOWARD L.L.C.

By: */s/ David A. Weatherwax*
David. A. Weatherwax
Sean M. Moore
Jake T. Rapp
Attorneys for Plaintiff